COLLINS
*vs*
THE CITY OF LOU-
ISVILLE.

*motion to ex-*
*clude the evi-*
*dence of such*
*witness, shall be*
*first made and*
*decided, that the*
*party may re-*
*lease the witness*
*or prove the fact*
*by other testimo-*
*ny.*

---

## Collins *vs* The City of Louisville.

ASSUMPSIT.                ERROR FROM THE JEFFERSON CIRCUIT.

*Case 57.*          *Corporation of Louisville.    Power of taxation.*

JUDGE MARSHALL delivered the Opinion of the Court.

*November 1.*

The case stated.

THIS writ of error is prosecuted by Collins to reverse a judgment of the Jefferson Circuit Court, for $268 09½ rendered against him, in an action of assumpsit brought by the City of Louisville, upon the allegation that he was indebted to the plaintiff in a large sum for measuring 51,460 bushels of stone coal, at a half cent per bushel, and 4,318 bushels, at a quarter of a cent per bushel; which measurement is averred to have been made under the ordinances of the Mayor and Council of the city, by the measurer duly appointed, &c. and at the defendant's request. The law and the facts were submitted to the Court, to be determined without a jury, and it appears

that the coal was brought to Louisville for sale from Pennsylvania, of which State Collins was a citizen, in a boat, on which he paid wharfage fees to the city—that it was measured, and the quantity ascertained by the city measurer of coal, lime and wood, regularly appointed, and in obedience to the ordinances of the Mayor and Council, but not at the request of Collins; and it may be inferred that the larger quantity above stated, was sold at the wharf and from the boat of Collins, by retail, and the smaller quantity not being so sold, was landed within the city or sold in the boat, the former being measured by loading it in carts, the capacity of which had been previously ascertained and stamped upon them by the measurer, and the latter by measuring the bulk in the boat or on the wharf.

The ordinances of the city, relating to the sale and measurement of coal, were submitted in evidence, from which it appears that the seller of coal, brought to the city by water, is charged a half cent per bushel upon coal sold and measured in the mode first above stated, and a quarter of a cent upon coal sold and measured in the latter mode, or landed or unladen within the city— that the measurer is bound, at short intervals, to render an account of the coal measured to the city government; to pay over to the treasury the nett proceeds of the charge, after deducting the expenses in the employment of assistants, &c. and is to receive, as his compensation, one fourth of the sum received for measuring. The ordinances provide for the measuring of carts by the city measurer, and the stamping of said measurement and the contents thereon, at the expense of the owner. It is declared to be unlawful for any person to haul lime or coal from the wharf without first having his cart or carts measured, and a penalty is denounced for a violation of this inhibition, &c. And an ordinance of 1832, still in force, ordains that the seller of lime and coal, sold at the city wharf, shall pay a tax on the same of one half cent for each bushel so sold, which would seem to include that sold in the boat by wholesale, as well as on that sold by retail. Upon these facts it is contended, in opposition to the claim of the city and to the judgment rendered therefor,

COLLINS
vs
THE CITY OF LOU-
ISVILLE.

1st. That this burthen laid upon coal, instead of being in good faith a charge for measuring, or a mode of enforcing the right of measuring the article, as from some of the ordinances it would seem to be, is in truth a specific tax upon coal brought to the city for sale, imposed for the purpose of raising revenue therefrom. 2d. That the Legislature of Kentucky has never conferred, or attempted to confer upon the Mayor and Council of Louisville the power to lay such a tax, and that under their charter, and the laws relating to the city, they have no such power. And 3d. That if the Legislature had undertaken to confer such power, the exercise of it, in the present case, by the imposition of a tax upon coal imported from Pennsylvania, by a citizen of that State, is in violation of that clause of the Constitution of the United States which prohibits any State from laying any imposts or duties on imports, except such as may be absolutely necessary for executing its inspection laws—and also, of that which confers upon Congress the power to regulate commerce between the States. We shall proceed to consider these propositions, so far as may be necessary to a decision of this case.

Trustees of Louisville to appoint measurers of coal, lime and wood, &c. same power afterwards conferred on Mayor and Council.

1. By the 5th section of an act of 1825, (*Ses. Acts,* 81,) the trustees of the town of Louisville are empowered, among other things, to appoint measurers of lime and coal and wood brought to the town for market, by land or water, and sold therein, and to affix a reasonable allowance to such measurer, and to make such regulations as may be necessary and proper for carrying the same into effect, and to inflict penalties for a breach of such regulations. The same power was afterwards conferred on the Mayor and Council of the city of Louisville. Conceding that the power thus conferred, includes the power of exacting the reasonable compensation of the measurer, and all other expenses properly attendant on the measurement, from the seller or buyer of the coal, and of thus, in effect, throwing this burthen upon the coal itself, in its price to the consumer, the question arises, whether the burthen actually imposed by the ordinances which have been referred to, can be fairly considered as being exacted with a view and confined to the purpose

of raising the sum necessary to defray the reasonable expenses of the measurement, or whether it must be regarded as being levied for the purpose substantially of bringing revenue to the city.

Extending to the city authorities and their ordinances, the utmost liberality, both in the construction of language and of motives, it seems to us too plain to admit of doubt, upon the ordinances and facts stated, that this is a tax upon coal not merely for the purpose of defraying the expenses of its measurement, but principally and substantially for the purpose of raising revenue from that article, which, after paying the expenses of measurement, shall go into the general fund of the city. None of the ordinances contain the slightest evidence that, in fixing the sum to be paid upon each bushel of coal measured or sold, any reference whatever was had to the actual or probable expense of measurement. The earlier ordinances authorize the measurer to charge so much for measuring, but he was required to pay the proceeds into the treasury, and was allowed first, a fixed salary, then a third, and now a fourth of the amount received. And as the requisition that all the vehicles in which coal is conveyed from the wharf shall be first measured and certified by stamp, affords a reasonable guarantee to the citizens receiving it as to the quantity received; and as none of the ordinances exhibited in this case require from the measurer any other evidence of quantity to be furnished to individuals, than that which is furnished by his stamp or certificate on the vehicle in which it is delivered, it would seem that the principal duty of the measurer is not to ascertain and certify to individual purchasers the quantities conveyed to them respectively, but to ascertain merely the aggregate amount sold, with a view to the amount of money to be charged and collected. In perfect coincidence with this inference, the last ordinance, above cited, levies the tax *eo nomine* on each bushel of coal sold at the wharf, and the measurer is the officer who, by his own observation, or the information of the carters or others, ascertains the number of bushels on which the tax is charged, and proceeds to

COLLINS
*vs*
THE CITY OF LOUISVILLE.

The Mayor and Council of Louisville have no power to levy a tax on coal, &c. landed at the wharf, for revenue purposes, but only so far as necessary to defray charges of inspection and measurement, when required.

Vol. II.                              18

collect it, retaining only one fourth as his own compensation.

It may be, that in the fair execution of this power of requiring coal vended in the city to be measured under public authority and supervision, the Mayor and Council would not be bound down merely to fixing a fair compensation for the trouble and expense of measurement, and enforcing its payment to the measurer in each case: but whether they should be thus restricted, or might properly require the charge for measurement to be paid into the city treasury and there settle and pay the expenses, it is entirely obvious, that when the sum charged and paid into the treasury, nominally as the price of measuring, exceeds the actual cost of measurement, including the fair compensation of the measurer, permanently and certainly in the ratio of three fourths, or two thirds, or one half, or in any other sensible and significant proportion, such sum is not in truth a mere charge for measuring, but is, to the extent of the excess at least, a tax for general purposes; and as the charge for measuring coal sold from the boat or in the boat, seems to be incurred for the sole purpose of ascertaining and collecting the tax, the whole amount should be regarded as a tax for general purposes, burthened only with the expense of assessment and collection at a very high rate. It is to be remarked too, that the tax of half a cent per bushel on coal, is from three to five per cent. upon the value of the article, when the general taxes assessed upon property in the city are limited by law to one half of one per cent. upon the value. In support of the conclusion, that this charge for measuring coal is, in truth, an exorbitant specific tax levied for general purposes, it is scarcely necessary to refer again to the ordinance which demands its payment as a tax, for it is no more of a tax since it has been so denominated than before, and the ordinance only shows that its true character, as a tax, was understood by the Mayor and Council.

We proceed then to enquire by what authority the Mayor and Council of Louisville have undertaken to levy this extraordinary tax; they certainly do not derive it from the grant or power to appoint a measurer of coal

sold in the city, to provide for him a reasonable compensation, and to make the necessary and proper regulations for carrying these powers into effect.   These powers were not given for the purpose of enabling the city to raise a revenue from coal, but to enable it to afford to purchasers and consumers of the article within the city, the means of ascertaining the true quantity purchased and delivered, and to protect them from imposition and extortion.   The authority to measure all coal vended in the city is not expressly given, and it is only by a liberal construction of the power in reference to its objects, that it authorizes the city to compel the measurement of any coal without the request of either the buyer or the seller. Nor is the authority expressly given to raise the compen. sation to the measurer by a charge on the coal measured; but it may result from the power to make necessary and proper regulations, and from the propriety of requiring those for whom the service is performed, to pay for it. Conceding the power to compel the measurement of all coal vended in the city, and to require the vendor to pay for the measurement, still the authority for raising money under this grant is limited by the object for which it is to be raised, that is, by the reasonable compensation to be paid for the measurement.   If it be conceded that because the city may appoint a measurer of coal vended in the city, and provide for his payment, she may require all coal so vended to be measured, and charge the vendor with a just compensation for the measurement, it by no means follows, and cannot be admitted, that under color of exacting this compensation from the vendor, she may tax him on his coal *ad-libitum.*

It was said in argument by the counsel for Collins, that the Mayor and Council of Louisville claim the power of laying the charge or tax on coal, which is now sought to be enforced, under no other legislative act but that which has just been considered, and which we are decidedly of opinion does not confer it.   Nor has any other act been pointed out on the part of the city, as specifically granting the power.   But we have been referred to the general powers of taxation, granted to the city in the original and amended charter, as being sufficiently

comprehensive to embrace the exercise of power attempted in this instance. Upon looking into the charters, however, we are satisfied that they do not, by any fair construction, confer, or profess to confer, upon the Mayor and Council the power of laying a specific tax, or duty for revenue, upon coal or upon the vendor of coal, for each bushel sold at the wharf.

In the first place, the general power of taxation authorized by the original and amendatory acts of incorporation, with certain exceptions therein specified, requires annual assessments, and the taxes subject to the exceptions stated, are to be laid upon the *ad valorem* principle; and coal sold from a boat at the wharf is not among the exceptions, or if it be, the mode provided for taxing the excepted articles is not pursued in this case.

*A general grant of power to tax personal estate, does not embrace coal, wood &c. bought for consumption in Louisville.—Nor is coal, &c. in a boat at the wharf subject to a specific tax except to pay for admeasurement.*

2nd. It may well be doubted whether the power granted to lay and collect taxes on the real and personal estate, within the city, embraces coal brought to the city wharf in a boat, to be sold there immediately, and for which wharfage fees are paid as long as the boat remains at the wharf, and whether the coal can be considered as a part of the personal estate, within the city, until it is either stored in the city for sale or distributed out among the inhabitants.

3d. Although stores of articles which are consumed in the use, as fuel, food, &c. may properly be the subjects of taxation, it is unusual either to tax such articles in the hands of the consumer, or to tax each sale to the consumer, and if such mode of taxation be allowable, it should not be understood as being authorized by general words, confering power to tax personal estate.

4th. If a boat load of coal, lying at the wharf, should be regarded as a store within the city, subject to taxation under the charter, it should either be taxed according to the value of the property, at a rate not exceeding fifty cents on the hundred dollars, which is one half of one per cent. or it must be classed according to the classification of stores authorized by the charter, and taxed within the limit prescribed for its class.

5th. Although the charter confers the power of taxing certain occupations or transactions, it does not confer

the general power of taxing sales, nor of taxing the occupation of selling, except by authorizing stores to be classed and taxed; nor does it confer the particular power of taxing the sale of coal.

We are of opinion, therefore, that the Mayor and Council of Louisville have no authority to levy a specific tax upon coal, or upon the sale of coal, such as is attempted to be enforced in this case, except so far as it can derive such authority from the provisions of the act of 1825, above referred to, which are re-adopted in the charter of the city, and that although that act might authorize a small charge, which would, in effect, be a specific tax or duty, for the specific purpose of paying for the measurement of the coal; yet as it does not appear what portion of the charge or tax would be a fair compensation for the measurement made, and as, moreover, it does *not* appear that any measurement was made by the measurer, for which either he or the city deserve compensation; and as, in fine, any measurement which may have been made by the measurer, was made, so far as appears, for the exclusive benefit of the city, in order to ascertain the number of bushels subject to the tax or charge, we are of opinion that the plaintiff made out no ground for the recovery of any part of the demand sued for. The city cannot, by making an unauthorized demand of money from the defendant, entitle herself to recover the amount demanded; nor can she, by employing a measurer to measure his coal, for the purpose of ascertaining and enforcing such a demand, place him under any obligation to pay to either of them the cost of the measurement.

Having come to this conclusion, upon the two first propositions, which were stated for consideration, it is unnecessary, and would be improper, to enter upon the discussion of the third, which is of too serious and important a character to be taken up by anticipation. We may remark, however, without going beyond the limits of this case, that so far as the measurement, by public authority, of coal or other articles, introduced into the State for sale and consumption, might fairly be deemed essential for protecting purchasers from imposition, with

regard to quantity, we should be inclined to think, that the right of causing such measurement to be made, and of providing for the expenses, by a slight charge or duty on the article measured, would stand substantially on the same ground, under the constitution of the United States, as the right of inspecting articles of another description, for the purpose of ascertaining the quality, and preventing fraud and imposition in that respect. It would seem, therefore, that the charge or duty upon articles imported from another State, should, under the Constitution of the United States, be no greater than would be absolutely necessary to effectuate the measurement and its legitimate objects.

Wherefore, the judgment is reversed and the cause is remanded for a new trial.

*Grigsby* and *H. Marshall* for plaintiff; *Owsley* for defendant.